UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

WESLEY CARL WEBBER,

           Plaintiff,

v.                                            CIVIL ACTION 5:15-cv-13145

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 17) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 18).

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered September 15, 2015, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF No. 4).

### Background

Wesley Carl Webber, Claimant, protectively applied for disability insurance benefits (DIB) under Title II of the Social Security Act on June 25, 2012, alleging disability beginning on January 14, 2008. The claim was denied initially on October 22, 2012, and upon reconsideration on January 14, 2013. Claimant filed a written request for hearing on January 23, 2013. On March 25, 2014, Claimant appeared in Beckley, West Virginia, and the Administrative Law Judge (ALJ) presided over the hearing via video from Roanoke, Virginia. In the Decision dated May 19, 2014,

the ALJ determined that the Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. On July 16, 2015, the Appeals Council denied Claimant's request for review of the ALJ's decision (Tr. at 1-4).  The Appeals Council (AC) stated that "we considered the reasons you disagree with the decision.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision" (Tr. at 2).    Subsequently, Claimant brought the present action requesting this Court review the decision of the Defendant and that upon review, it reverse, direct the defendant to pay disability income benefits accrued from the plaintiff's initial date of application, or, in the alternative, remand, award plaintiff costs and reasonable attorney's fees and grant further relief as this Court deems just and proper (ECF No. 17).

<u>Standard of Review</u>

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2015).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.   *Id.* § 404.1520(d).  If it does, the claimant is found disabled and awarded

benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* § 404.1520(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2015).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of January 14, 2008, and meets the insured status requirements of the Social Security Act through December 31, 2013 (Tr. at 12).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of residual symptoms from a work accident with burns of the lower extremities and left hand, chronic dry eye, right knee derangement status post-surgery, obesity and peroneal nerve neuropathy (Tr. at 13).  At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 14).  The ALJ then found that Claimant has a residual functional capacity to perform light work, however, Claimant's ability to perform all or substantially all of the requirements of this level of work is impeded by additional limitations (Tr. at 15). The ALJ found that Claimant is further limited to more than two hours of standing and/or walking in an

eight-hour workday. Claimant should never use his lower extremities for pushing or pulling. He can frequently balance; occasionally kneel, crouch, stoop or climb ramps or stairs; and never crawl or climb ladders, ropes or scaffolding. Furthermore, Claimant must avoid concentrated exposure to temperature extremes, vibrations and hazards such as dangerous moving machinery and unprotected heights (Tr. at 15). The ALJ concluded that Claimant could not perform past relevant work (Tr. at 21). The ALJ concluded that considering Claimant's age, education, work experience and residential functional capacity, there are jobs that exist in significant numbers in the national economy that Claimant can perform. On this basis, benefits were denied (Tr. at 22).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on June 12, 1984. He graduated from high school and trained for two years at vocational school during high school. Claimant received a certificate as an electrician from the vocational school. He also attended vocational school for two years after high school (Tr. at 40-41). Claimant studied heating, ventilation, air conditioning and refrigeration and received a certificate in HVAC (Tr. at 40). At the time of the hearing, Claimant lived in White Sulphur Springs, WV with his mother and father (Tr. at 44).

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the ALJ did not fairly assess his residual functional capacity (RFC). Claimant argues that the "ALJ chose to ignore the uncontested fact [Claimant] must elevate his feet throughout the day due to the residual effects of his medical condition. As a result, the ALJ relied upon an improper hypothetical to support the denial of [Claimant's] claim for disability benefits" (Tr. at 17). Also, Claimant asserts that the ALJ failed to follow the "treating physician's rule" by disregarding his treating psychologist's opinion regarding the residual effects of PTSD, depression and anxiety. Finally, Claimant argues that the ALJ "displayed improper bias during the hearing" by being combative, interrupting Claimant and his counsel and behaving "openly hostile."

Defendant avers that substantial evidence supports the ALJ's sequential evaluation at step-five in determining that Claimant retained the ability to perform a limited range of sedentary work (ECF No. 18). Defendant asserts that "A review of the administrative hearing record plainly shows that the ALJ acted professionally, courteously and fairly toward Plaintiff, his attorney and all of the other individuals who participated in the hearing." (*Id.*) Also, Defendant asserts that the ALJ properly evaluated the medical opinion evidence under the regulations and that substantial

evidence supports the ALJ's analysis.

<u>Medical Record</u>

Due to the recommendation to remand this matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), only the medical records and testimony pertaining to the severe physical impairments in Claimant's lower extremities and his resulting limitations thereof are addressed in this Proposed Findings and Recommendations. The Court adopts the medical record findings asserted by Claimant and Defendant to the extent as follows (ECF Nos. 17 & 18).

Claimant initially presented to Cabell Huntington Hospital (CHH) on January 14, 2008, for treatment of burns to his bilateral lower extremities (Tr. at 271-541). Claimant stayed as an inpatient on numerous occasions for medical treatment, including multiple skin-graft surgical procedures and blood transfusions until discharge on June 24, 2008 (Tr. at 272). The CHH records contain notations describing pain, inability to function and necessity to use assistive devises (Tr. at 271-541). Upon discharge on June 24, 2008, it is noted that Claimant had multiple failed skin grafts, was in wound care and physical therapy and needed a walker to ambulate (Tr. at 273). He was discharged from CHH with a prescription for physical therapy and medications. (*ld.*)

Claimant was admitted to CHH again on August 13, 2008. Claimant's chief complaint was that he "believed that his graft looked a little soupy and possibly with infection" (Tr. at 275). He was directly admitted to the CHH burn unit for additional wound care and possible debridement. (*ld.*) On November 3, 2008, Claimant still had unhealed lesions on his left hip and needed a cane to ambulate (Tr. at 636). On February 17, 2009, Claimant presented to Joseph Grady, MD, C.I.M.E., for an "Independent" medical evaluation

at the request of his company's workers comp carrier (Tr. at 710 –716). Dr. Grady noted that Claimant had not reached maximum medical improvement and continued with "discomfort in the popliteal fossa area of both of his knees, more on the right than on the left, that is likely due to some subcutaneous scar formation from the extensive burns and surgeries that he had in that location. There is a small superficial open wound there currently" (Tr. at 715).

On May 11, 2009, Claimant returned to the CHH wound center and complained of open wounds on his posterior thigh due to rubbing from his necessary compression socks (Tr. at 607- 610). He was ordered to participate in physical therapy for an additional 5 weeks and return or follow up in two months. (ld.) Claimant presented again on July 16, 2009, at the CHH wound clinic, at which point it is noted he had keloid scarring[1] and should continue with physical therapy (Tr. at 640- 606). On September 24, 2009, Claimant presented to the CHH wound clinic noting "pain when walking more than 15 minutes" (Tr. at 600).

Claimant was evaluated at the workers compensation carrier's request again on October 7, 2009 (Tr. at 874 – 880). He was evaluated by Robert B. Walker, MD, who noted that Claimant complained "of pain on prolonged standing or sitting in one position" (Tr. at 875). Dr. Walker reported the following:

> The claimant states he cannot stand or walk for very long. He states he has pain and "tingling feelings" in his lower extremities. The claimant states at times he has to either stand or alt to avoid the pain and "prickly feelings" in his legs. These are often relieved by standing or sitting, pacing or assuming a different posture (Tr. at 875).

---

[1]Keloid scars are raised, sometimes painful, scars which often result from burns. Keloids can cause contractures, which may result in loss of function if overlaying a joint...keloids can be both painful and pruritic. Brian Berman, MD, PhD, *Keloid and Hypertropic Scar,* (2014) available at http://emedicine.medscape.com/article/1057599-overview#a6.

On physical examination Dr. Walker noted "lower extremities are mainly covered with extensive scarring" (Tr. at 876).  Dr. Walker reported that Claimant continues with "persistent lower extremity edema"[2]  (Tr. at 879).  Claimant returned to the CHH wound center on April 19, 2010 (Tr. at 596–599).  Claimant reported pain when walking for more than 15 minutes. (*Id.*) In the clinical progress section it is noted that Claimant "has limited mobility" (Tr. at 598).

Claimant was evaluated by Elizabeth Davis, RN, MS, CRRN, CLCP, CRC, for a Life Care Plan stemming from his injuries.  Ms. Davis is a registered nurse and certified life care planner (Tr. at 945 - 958).  Ms. Davis prepared a report dated February 2, 2011, in which she stated "limitations in functional range of his lower extremities related to burn contractures and requires a lowered bed.  He is currently experiencing difficulty getting in and out of his current bed and is concerned about the effect of that motion upon the present scar tissue" (Tr. at 950).  "At this time, Wes is dependent upon others for housekeeping activities as well as laundry...Wes may require personal assistance for expanded self-care and home making activities" (Tr. at 953).

On March 10, 2011, Rhonda Guy, M.D., Claimant's primary care physician, notes that Claimant continued to experience pain in his legs described as "prickly, tingly, pain" (Tr. at 1929). Dr. Guy diagnosed Claimant with worsening peripheral neuropathy referred, among other conditions, and referred Claimant to Brian Vaught, MD, for Neurological evaluation (Tr. at. 1930). On March 22, 2011, Dr. Vaught evaluated Claimant for prickling paresthesias in the legs. Dr. Vaught's notes reflect that Claimant self-reported to being unable to stand or walk for more than 15 minutes without sitting down (Tr. at 1123-1124).

---

[2]  Edema means swelling caused by fluid in body tissues.  It usually occurs in the feet, ankles and legs, but can involve the entire body..."*to keep swelling down, your health care provider may recommend keeping your legs raised when sitting*, wearing support stockings, etc." See, https://www.nlm.nih.gov/medlineplus/edema.html.

Dr. Vaught confirmed a neurological injury of both legs through nerve conduction studies. (*ld.*) Claimant was prescribed Lyrica and ordered to return for care in three (3) months. (*ld.*)

At a follow-up appointment on May 16, 2011, Dr. Guy noted that Claimant's legs and feet continue to swell and hurt (Tr. at 1935). On March 9, 2012, Claimant received emergency treatment after an ATV accident (Tr. at 1097-1101). An x-ray of Claimant's left leg reported "No acute fracture or dislocation is demonstrated. There are surgical clips in the soft tissues" (Tr. at 1101). On March 19, 2012, Tony C. Majestro with Orthopedic Healthcare Associates, Inc. observed that Claimant walked with a mild limp, and he administered a steroid injection (Tr. at 1188). On April 20, 2012, an MRI of Claimant's left knee revealed a torn anterior cruciate ligament (ACL) (Tr. at 1186). On June 4, 2012, Dr. Majestro reported that Claimant had improved with conservative treatment, however, Claimant "Still has some mild chronic low grade discomfort in his knee. He feels that his knee continues to give out intermittently" (Tr. at 1184-1185).

On October 5, 2012, Nisha Singh, M.D., reviewed the record and opined that Claimant retained the ability to lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for about six hours and sit for about six hours during an eight-hour day with normal breaks; and perform unlimited pushing and/or pulling consistent with his lifting/carrying abilities (Tr. at 82). Dr. Singh opined that Claimant could perform postural activities occasionally; he should avoid concentrated exposure to extreme heat and vibration; he could tolerate unlimited exposure to other environmental conditions; and he had no manipulative, communicative, or visual restrictions (Tr. at 82-83). Dr. Singh's credibility assessment stated that partial credibility is suggested.

On November 6, 2016, Claimant saw Dr. Guy to have "backs of [his] knees checked"

(Tr. at 1975). It is noted Claimant had pain in ankles, knees and hips bilaterally with full range of motion on both legs. (Tr. at 1976). Dr. Guy notes "continuous pain in both legs and depression" (Tr. at 1964).

Based on a review of the updated record, on January 3, 2013, Subhash Gajendragadkar, M.D., concurred with Dr. Singh's opinion (Tr. at 98-99). Dr. Brian R. White diagnosed him with varicose veins which may require ablation. Mr. Webber was informed he would have to return to CHH for surgery due to the extensive skin graft procedures he had undergone. (*Id.*) In January 2013, Plaintiff underwent a lower extremity venous duplex examination that revealed reflux in his femoral and proximal veins but no evidence of deep vein thrombosis (Tr. at 1992).

On January 29, 2013, Claimant was referred to Beckley Vascular Associates for evaluation by Brian R. Whyte, M.D., RVT, FACS (Tr. at 1989 - 1997). Claimant complained of bilateral leg pain and swelling. Dr. White diagnosed him with varicose veins which may require ablation.

On February 25, 2013, and April 3, 2013, Claimant presented to Dr. Guy with continued complaints of leg pain (Tr. at 2005, 2012). On June 19, 2013, Claimant presented to Dr. Guy wherein it is noted that Claimant experiences "chronic pain, failing to change as expected saw Dr. Saikali who agreed that pain was from burn damage" (Tr. at 2015).

<u>Claimant's Testimony</u>

Claimant testified that he sustained 2nd and 3rd degree burns to both of his legs which necessitated nine (9) skin graft surgeries (Tr. at 43-44). He testified that he is left with scarring and nerve damage in both legs (Tr. at 44). Claimant stated that he applied for disability "Because I have issues with my legs" (Tr. at 45). He testified that he "can't walk for maybe 10 to

15 minutes without having so much pain that I have to physically sit down.  And the adema, the swelling in my feet just that hurts because if I'm up for too long" (Tr. at 45-46).  Claimant stated that he did not experience swelling in his feet prior to his accident in 2008 (Tr. at 46).  When asked by his counsel why he was propping up his legs during the hearing, Claimant responded "Because if my legs are down they swell and they hurt."  (*Id.*)  Claimant described the pain in his legs as follows: "Swelling is just severe pressure and nerve pain is like somebody stabbing you with needles" (Tr. at 46-47).  He stated that the pain affects "completely engulfs" his concentration (Tr. at 47).  Claimant testified that he cannot squat or bend from the waist due to skin tightness and scar tissue behind his knees (Tr. at 47-49).

Claimant testified that he took a Tylenol 3 up to twice a week for pain (Tr. at 48).  He also took Lyrica for neurological pain, which he stated was helpful but does not alleviate all of his neurological pain (Tr. at 56-57).  He stated that his mom prepares his medications for him (Tr. at 58).  He attends Bible study at his church with his parents every Wednesday.  Claimant testified to target shooting once a month with rifles.  He sits down when he is shooting and can only do for five to ten minutes (Tr. at 60-61).

An impartial vocational expert (VE) at the hearing testified that a person needing to stay in a "sedentary work position during the day" with his lower extremities elevated comparatively to the seat would be "virtually impossible to successfully perform the sedentary work"[3] (Tr. at 71).  The VE stated that such a need goes beyond being an accommodation.  (*Id.*)

---

[3] The VE testified:

"Sedentary work requires a forward posture or flexion for a prolonged period of time to perform sedentary work.  And I think it's almost impossible to hold upper body posture flexion or bending forward while simultaneously elevating the lower extremities to the level that you described.  Moreover, it's my opinion that, if the lower extremities need to be elevated to the height that you described basically the, the elevation is level, comparably level to the seat, then it's virtually impossible to successfully perform the sedentary work" (Tr. at 71).

The ALJ asked the VE whether jobs existed for an individual of Claimant's age, education, and work background, who could perform light work involving frequent balancing; occasional kneeling, crouching, stooping, or climbing ramps or stairs; never crawling or climbing ladders, ropes or scaffolds; stand and/or walk for two hours out of an eight-hour day; sit for six hours out of an eight-hour day; and never use his lower extremities for pushing or pulling; and could have no concentrated exposure to temperature extremes, vibrations, and hazards (Tr. at 69-70). The VE testified that a person with such a background and limitations could perform jobs existing in significant numbers in the national economy, such as the sedentary, unskilled occupations of assembler, packer, and inspector/test sorter/gauger (Tr. at 70).

## Credibility Determination

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes him from performing not only his previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

In the present matter, the ALJ held:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision (Tr. at 17).

12

Substantial evidence does not support the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The Fourth Circuit has held that the ALJ's failure to evaluate a claimant's credibility before analyzing the RFC is harmful error and requires remand. *Mascio v. Colvin*, 780 F.3d 632, 639-640 (4th Cir. 2015). Although the ALJ states that in determining the RFC findings he considered "all symptoms and extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as opinion evidence, the ALJ failed to evaluate Claimant's credibility prior to his RFC analysis.

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010) (citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings... are entitled to substantial deference"). When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. §§ 404.1529(b) and 416.929. If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c) and 416.929. As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

The procedural sequence which an ALJ must follow in determining credibility of a claimant and in determining a claimant's RFC is the issue necessitating remand in the present

matter. The regulations on assessing credibility state that "We will consider all of the evidence presented, including information about your work record, your statements about your symptoms, evidence submitted by your treating, examining or consulting physician or psychologist, and observations by our employees and other persons." 20 C.F.R. §§ 404.1529(c)(3) and 416.929. When an ALJ evaluates a claimant's RFC, a medical assessment of the claimant's remaining capabilities to work, he considers all of the relevant medical and other evidence. See 20 C.F.R. § 404.1513; SSR 96-8p. In cases in which symptoms, such as pain, are alleged, the RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations. Additionally, the RFC assessment must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work. Richard C. Ruskell, *Social Security Disability Claims Handbook* (2015 Edition), 214 n.5.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts… and nonmedical evidence." Courts have held that an ALJ failed to follow SSR 96-8p "by merely summarizing the medical evidence. The Ruling requires a narrative discussion of the RFC to show how the evidence supports the ALJ's conclusion." *Munday v. Astrue*, 535 F.Supp. 2d 1189, 129 Soc. Sec. Rep. Serv. 726 (D. Kan. 2007). The RFC assists the ALJ in determining whether the claimant retains enough vocational capacity to return to work. When calculating the RFC, the ALJ must take all factors into account and explain his conclusions with substantial evidence. *See Kotofski v. Astrue*, 157 Soc. Sec. Rep. Serv. 313, 2010 WL 3655541 (D. Md. 2010).

Furthermore, the ALJ must accompany his decision with sufficient explanation to allow a

14

reviewing court to determine whether the Commissioner's decision is supported by substantial evidence.  The Commissioner is required to include in the text of [his] decision a statement of the reasons for that decision.  *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).  The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion.  This duty of explanation is always an important aspect of the administrative charge. . . ."  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

In assessing Claimant's credibility, the ALJ found the following:

> The claimant's statements regarding the severity of his limitations are not entirely credible, to the extent they are inconsistent with the residual functional capacity, because they are not supported by the longitudinal treatment record of a significant but improving burn injury, the documented follow-up clinical and examination findings, and [Claimant's] stated ongoing capabilities (Tr. at 20).

The ALJ's statement, provided above, demonstrates that the ALJ found Claimant's self-reported symptoms and limitations "not entirely credible" because they were not consistent with the medical records in evidence and the ALJ's RFC.  Additionally, the ALJ did not specifically address Claimant's need to elevate his feet while in a seated position when discussing his RFC or credibility. Even if the ALJ's credibility assessment were found to be, at best, comingled with the RFC, the ALJ still fails to discuss or refute Claimant's testimony and medical evidence addressing his physical impairment requiring him to elevate his feet while seated.

Therefore, this Court recommends the District Judge find that Defendant's credibility assessment and the RFC's evaluation of all evidence are not supported by substantial evidence. Other issues raised by the parties shall be addressed on remand.

<u>Conclusion</u>

The undersigned proposes that the United States District Court remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to review and

consider the entire record.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 17), **DENY** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 17), **REVERSE** the final decision of the Commissioner and **REMAND** this case for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Irene C. Berger.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:  August 1, 2016

Dwane L. Tinsley
United States Magistrate Judge